**■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEX R. SHOGA, Appellant.** [933 NYS2d 126]—

Garry, J.

In 2008, the Broome County Sheriff's Office received information from a confidential informant (hereinafter CI) indicating, among other things, that defendant would be returning from New York City, where he had allegedly purchased cocaine for resale. Officers obtained a search warrant permitting the search of defendant's person, any car in which he was traveling, and an apartment in the City of Binghamton, Broome County where he allegedly resided. Shortly thereafter, officers pulled over a vehicle driven by defendant to execute the warrant. No contraband was found in the vehicle or on defendant's person. Defendant was taken to the Sheriff's Office and placed in an interview room, where certain belongings that had been found in the search of his person—including a key—were placed on a table. After advising defendant that the apartment was about to be searched, officers left him alone in the interview room for a few minutes. When they returned, the key had disappeared, and defendant was coughing, pounding his chest, and requesting a drink of water. Upon searching the apartment, officers found cocaine and a loaded gun that had its serial number removed. Nine days later, a correction officer found a key on the sink in defendant's cell at the Broome County Correctional Facility. Investigators determined that this key fit the lock from the apartment door.

Defendant was indicted on charges of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree (two counts), criminal possession of a controlled substance in the third and fifth degrees, and tampering

with physical evidence. At a preliminary hearing, defendant denied under oath that he was carrying a key to the apartment when he was pulled over. He was then indicted for perjury in the first degree, and County Court granted the People's motion to consolidate the indictments.

Defendant was convicted of all charges following a nonjury trial, except for criminal possession of a controlled substance in the third degree. County Court sentenced him as a second felony offender to an aggregate prison term of eight years and five years of postrelease supervision for all of the convictions except the perjury charge, upon which he was sentenced to 2 to 4 years, to run consecutively to the other sentences. Defendant appeals.

Defendant first contends that critical proof is lacking as to all of his convictions because physical evidence consisting of the key and certain photographs of the gun should not have been admitted at trial. He asserts that the key was inadmissible because of a gap in the chain of custody consisting of a cut in the evidence bag that contained it as well as inconsistent testimony as to its color. We disagree. Where, as here, "an object possesses unique characteristics or markings and is not subject to material alteration which is not readily apparent, a simple identification is sufficient to warrant admission" even when a chain of custody is not fully established (*People v Julian*, 41 NY2d 340, 343 [1977] [internal quotation marks and citation omitted]; *accord People v Roblee*, 83 AD3d 1126, 1127 [2011], *lv denied* 17 NY3d 809 [2011]). The key was first secured as an item of evidence by the correction officer who found it in defendant's cell. At trial, he identified the key as the same one he had found based on its color and markings, and he testified that it was in the same condition as when he found it. A detective explained the cut in the evidence bag by testifying that he made the cut to remove the key from the bag in order to test it in the apartment lock, and then replaced it in the bag and sealed the cut with tape. He realized only at trial that he had forgotten to initial the seal. In light of the testimony, the key was properly admitted based on "reasonable assurances of [its] identity and unchanged condition" (*People v Julian*, 41 NY2d at 343 [internal quotation marks and citation omitted]). The discrepancies in the witness testimony describing the key go to the weight of this evidence rather than its admissibility (*see People v Welch*, 71 AD3d 1329, 1331 [2010], *lv denied* 15 NY3d 811 [2010]; *People v Wynn*, 176 AD2d 375, 377 [1991]).

Defendant also contends that photographs of the gun should not have been admitted, because they were taken after a deputy removed the gun from the dresser drawer and then replaced it

to be photographed. However, the deputy testified that the only change he made in the gun's condition during the removal was to render it safe by removing the magazine and bullets, and that the gun was otherwise in the same condition and location in which it was found when the photographs were taken. Given this explanation, the People's photographs were not introduced to falsify the conditions under which the gun was found or otherwise mislead the factfinder, and the change in the gun's condition also went to the issue of weight rather than admissibility (see People v Gerber, 182 AD2d 252, 263-264 [1992], lv denied 80 NY2d 1026 [1992]; compare People v Davis, 10 AD3d 583, 583 [2004], lv denied 4 NY3d 743 [2004]).

Defendant next challenges the sufficiency and weight of the evidence supporting his convictions for criminal possession of weapons and controlled substances, arguing that the People failed to show constructive possession of the weapon and cocaine by demonstrating that he "had dominion and control over the area where the contraband was found" (People v Edwards, 39 AD3d 1078, 1079 [2007]; see Penal Law § 10.00 [8]; § 220.06 [5]; § 265.02 [1], [3]; § 265.03 [1] [b]; People v Paige, 77 AD3d 1193, 1196 [2010], affd 16 NY3d 816 [2011]). The apartment's lessee testified that she permitted defendant to use the apartment and keep belongings there, although his name was not on the lease and he did not pay rent. She testified that she gave him a key to the apartment so that he could come and go when she was not at home, and that he visited the apartment several times a week, spent the night there at times, and kept his belongings in various locations in the apartment, including a certain drawer in a bedroom dresser. She had emptied the drawer before allowing defendant to use it and had never seen the weapon or drugs in the apartment. Although her former boyfriend and two other people had briefly stayed in the apartment, she testified that they had departed before defendant arrived. The officers who searched the apartment testified that they found the gun and cocaine in the same drawer that the lessee had identified as defendant's, and that this drawer also contained male clothing and mail addressed to defendant, including an envelope directed to him at the apartment's street address. Viewed in the light most favorable to the People, this evidence was legally sufficient to establish that he had dominion and control over the area where the contraband was found (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Robinson, 72 AD3d 1277, 1277-1278 [2010], lv denied 15 NY3d 809 [2010]; People v Sawyer, 23 AD3d 845, 846 [2005], lv denied 6 NY3d 852 [2006]; compare People v Oldacre, 53 AD3d 675, 678-679 [2008]). Further, contrary to defendant's claim, evidence that he possessed a loaded firearm,

together with the statutory presumption of intent arising from such possession, was legally sufficient to establish his intent to use the gun against another for purposes of his conviction for criminal possession of a weapon in the second degree (*see* Penal Law § 265.03 [1] [b]; § 265.15 [4]; *People v Vargas*, 60 AD3d 1236, 1238 [2009], *lv denied* 13 NY3d 750 [2009]). The convictions are supported by legally sufficient evidence and, viewing the evidence in a neutral light and deferring to the factfinder's resolution of issues of credibility, the convictions are also not against the weight of the evidence (*see People v Bleakley*, 69 NY2d at 495; *People v Paige*, 77 AD3d at 1196; *People v Waters*, 30 AD3d 681 [2006], *lv denied* 7 NY3d 796 [2006]).

Defendant next challenges his conviction for tampering with physical evidence, contending that the People failed to prove that "[b]elieving that certain physical evidence [was] about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, [defendant] suppresse[d] it by any act of concealment" (Penal Law § 215.40 [2]; *see People v Lucas*, 25 AD3d 822, 823 [2006], *lv denied* 6 NY3d 815 [2006]).[1] The testimony established that shortly after defendant was told that the apartment was about to be searched, the key that had been found on his person disappeared under circumstances strongly suggesting that he swallowed it, followed by the appearance of a key to the apartment in his jail cell. Pointing to discrepancies in the witness testimony regarding the color of the key, defendant contends that the People failed to prove that the key found in his cell was the same one he was carrying when he was pulled over. However, the testimony as to the key's appearance was not as contradictory as defendant claims. The lessee said that the key she gave to defendant was "a silver key [that] said access on it." The correction officer described the key he found as black, but also said it bore the letters "A-X-X-C-S-S." A deputy who saw the key in the interview room before it disappeared said it was a "basic [Kwikset] lock key, brass key," and an apartment complex employee described the lock on the apartment door as a "[Kwikset]" lock. Finally, the detective who determined that the key found in defendant's cell operated the apartment lock also testified that when defendant was told that the apartment was to be

---

1. Defendant's challenge on this ground is "interchangeably" addressed to both the sufficiency and the weight of the evidence (*People v Lucas*, 25 AD3d at 823). Although the sufficiency claim was unpreserved, our weight of the evidence review necessarily includes an evaluation of the sufficiency of the evidence as to each element of the crime charged (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Ivery*, 80 AD3d 874, 874 n [2011], *lv denied* 16 NY3d 832 [2011]).

searched, he responded, "I'm not on the lease. You can't put [expletive] on me there." Shortly thereafter, while defendant was alone, the key disappeared. Viewing this evidence in a neutral light and according deference to County Court's credibility determinations, we find defendant's conviction on this charge supported by the weight of the evidence (*see People v Bleakley*, 69 NY2d at 495; *People v Green*, 54 AD3d 603, 603-604 [2008], *lvs denied* 11 NY3d 897, 899 [2008]; *see also People v Hafeez*, 100 NY2d 253, 259-260 [2003]).

We reject defendant's related challenge to his conviction for perjury in the first degree, which is committed when a defendant "swears falsely and when his [or her] false statement (a) consists of testimony, and (b) is material to the action, proceeding or matter in which it is made" (Penal Law § 210.15). In its role as factfinder, County Court determined that defendant's preliminary hearing testimony that he did not have an apartment key when he was pulled over was false. His possession of such a key was material to his tampering conviction, as discussed above, and also to the determination that he had sufficient dominion and control over the apartment to establish constructive possession of the gun and cocaine (*see People v Williams*, 51 AD3d 1141, 1144-1145 [2008], *lvs denied* 10 NY3d 965 [2008]). Thus, for the same reasons supporting his conviction for tampering with physical evidence, defendant's perjury conviction was supported by legally sufficient evidence and was not against the weight of the evidence (*see People v Taylor*, 44 AD3d 1159, 1161-1162 [2007], *lv denied* 9 NY3d 1039 [2008]; *People v Mead*, 41 AD3d 1306, 1306-1307 [2007], *lvs denied* 9 NY3d 959, 963 [2007]).

Defendant was not denied a fair trial by the consolidation of the indictments. When evidence of a crime charged in one indictment is material and admissible as evidence of a crime charged in a second, the two indictments may be joined in the trial court's discretion (*see* CPL 200.20 [2] [b]; [4]; *People v Rodriguez*, 68 AD3d 1351, 1353 [2009], *lv denied* 14 NY3d 804 [2010]; *People v Torra*, 309 AD2d 1074, 1075 [2003], *lv denied* 1 NY3d 581 [2003]). The perjury charge in the second indictment arose directly from defendant's statements at the preliminary hearing on the first indictment. Proof of the crimes charged in the first indictment was material and admissible as evidence of the crime charged in the second. Defendant failed to demonstrate any prejudice arising from the consolidation (*see People v Torra*, 309 AD2d at 1075; *People v Beverly*, 277 AD2d 718, 719 [2000], *lv denied* 96 NY2d 780 [2001]), and we perceive no abuse of discretion (*see People v Lane*, 56 NY2d 1, 9 [1982]; *People v Thomas*, 73 AD3d 1223, 1225 [2010], *lv dismissed* 15 NY3d 779 [2010]).

Defendant's contention that the search warrant was not based on probable cause is without merit. Despite his claim that the CI was unreliable and biased against him, our in camera review of the transcript of the *Darden* hearing conducted by County Court satisfies us that the court properly determined that the CI existed and was reliable (*see People v Lowe*, 50 AD3d 516, 516 [2008], *affd* 12 NY3d 768 [2009]; *People v Douglas*, 42 AD3d 756, 758 [2007], *lv denied* 9 NY3d 922 [2007]; *see generally People v Edwards*, 95 NY2d 486 [2000]). Contrary to defendant's argument, further inquiry into the CI's reliability and basis of knowledge under the *Aguilar-Spinelli* standard was not required, as the CI's identity was disclosed to the issuing court in a sworn statement detailing firsthand observations (*see People v Banks*, 14 AD3d 726, 727 [2005], *lv denied* 4 NY3d 851 [2005]; *People v Bourdon*, 258 AD2d 810, 811 [1999], *lv denied* 93 NY2d 897 [1999]; *People v Doyle*, 222 AD2d 875, 875 [1995], *lv denied* 88 NY2d 878 [1996]).

Defendant's claim that the search warrant was overly broad in that it permitted the search of any vehicle that defendant might be operating or occupying was not preserved for review, as this challenge was not raised in defendant's suppression motion (*see People v Ming*, 35 AD3d 962, 964 [2006], *lv denied* 8 NY3d 883 [2007]; *People v Santarelli*, 148 AD2d 775, 775 [1989]). Nonetheless, we note that it was supported by information that defendant used rental cars for drug-buying trips, and as nothing was found in the vehicle, no prejudice resulted. Further, as the warrant was based on probable cause, it was not improper for officers to transport defendant from the side of the highway to a more private location to execute the search of his person, nor to detain him while the apartment was searched (*see People v Hunter*, 73 AD3d 1279, 1281 [2010]).

Defendant was not deprived of a fair trial by County Court's failure to disqualify an Assistant District Attorney (hereinafter ADA) under the advocate-witness rule, which, as pertinent here, requires disqualification of a prosecutor if it appears that he or she "will be called as a witness" at trial (*People v Paperno*, 54 NY2d 294, 300 [1981]). The ADA in question handled a pretrial appearance after testifying against defendant at the grand jury proceedings on the perjury charge. Two days before the trial commenced, defendant requested the disqualification of the District Attorney's office and appointment of a special prosecutor as the People had not confirmed whether the ADA would be called as a trial witness. The record does not reveal the court's response, but there was no disqualification, nor was the issue raised again when the court inquired whether any issues

remained to be resolved before trial. In any event, disqualification was not required. The ADA neither appeared as a prosecutor at trial nor was called as a witness, and defendant failed to demonstrate a "substantial likelihood that prejudice resulted from [his] participation" in the pretrial proceedings (*People v Paperno*, 54 NY2d at 296 [1981]; *see generally People v Ortiz*, 54 NY2d 288 [1981]).

Defendant's contention that he was deprived of a fair trial by a comment made by the People during summation is without merit. In response to defense counsel's remarks about the inconsistent testimony regarding the color of the key, the prosecutor suggested that passage through defendant's digestive system could have changed its color. Defense counsel objected that the remark constituted testimony, and County Court told the People to "[g]o ahead" without explicitly sustaining or overruling the objection. Even assuming that this response was insufficient in the context of this nonjury trial (*compare People v Nickel*, 14 AD3d 869, 872 [2005], *lv denied* 4 NY3d 834 [2005]), the single comment did not rise to the level of reversible error (*see People v Clevenstine*, 68 AD3d 1448, 1451 [2009], *lv denied* 14 NY3d 799 [2010]; *People v Delaney*, 42 AD3d 820, 822 [2007], *lv denied* 9 NY3d 922 [2007]).

Defendant next contends that the People committed *Brady* and/or *Rosario* violations by failing to disclose before trial that a second search warrant was issued to obtain a letter in which defendant urged a friend to prevent the apartment lessee from testifying at his trial.[2] Defendant failed to preserve this argument, nor has he shown any violation (*see People v Stewart*, 68 AD3d 1438, 1441 [2009], *lv denied* 14 NY3d 773 [2010]); the search warrant was not favorable to defendant in any way (*see People v Hayes*, 17 NY3d 46, 50 [2011]), was not shown to constitute *Rosario* material, and it does not appear reasonably possible that its disclosure would have altered the verdict (*see People v Auleta*, 82 AD3d 1417, 1420-1421 [2011], *lv denied* 17 NY3d 813 [2011]).

Finally, we do not find the sentence harsh or excessive. Even had defendant preserved his claim that he was punished for exercising his right to trial by the imposition of a longer sentence than was offered during plea negotiations (*see People v Hurley*, 75 NY2d 887, 888 [1990]; *People v Ward*, 10 AD3d 805, 808 [2004], *lv denied* 4 NY3d 768 [2005]), the mere existence of a sentencing disparity does not establish retaliation where, as

---

**2.** The People disclosed the letter's existence before trial, and after a combined *Mapp/Sandoval/Ventimiglia* hearing, County Court determined that it was admissible because it demonstrated consciousness of guilt.

here, the record offers no other support (*see People v Molina*, 73 AD3d 1292, 1293 [2010], *lv denied* 15 NY3d 807 [2010]). A consecutive sentence for the perjury conviction was proper as it was based on the performance of "entirely separate acts" from the other charges, although they arose from related subject matter (*People v Bellamy*, 34 AD3d 937, 940 [2006], *lv denied* 8 NY3d 843 [2007]; *see People v Williams*, 51 AD3d at 1145-1146). In view of defendant's extensive criminal history, we find no extraordinary circumstances or abuse of discretion warranting modification (*see People v Appleby*, 79 AD3d 1533, 1534 [2010]).

Mercure, J.P., Peters, Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.