■ The People of the State of New York, Respondent, v Christopher J. Tucker, Appellant. [944 NYS2d 383]—

Stein, J. Appeals (1) from a judgment of the County Court of Washington County (McKeighan, J.), rendered September 25, 2009, upon a verdict convicting defendant of the crimes of possessing a sexual performance by a child and perjury in the first degree, and (2) by permission, from an order of said court, entered October 17, 2011, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing.

In or about October 2008, the State Police were engaged in an investigation of certain allegations of sexual misconduct by defendant, when they obtained information suggesting that two computers located in defendant's residence contained images of individuals under 16 years of age engaging in sexual conduct. In the course of the investigation, these computers—a desktop computer used by all members of defendant's household and a laptop computer primarily used by defendant's 12-year-old daughter—were searched. After the computers were examined at the computer crime unit of the State Police forensics laboratory (hereinafter forensics lab), evidence was found on the desktop's hard drive consisting of, as pertinent here, hundreds of images, videos and Web sites relating to sexual activities involving persons under the age of 16.

Defendant was subsequently charged by grand jury indict-

ment with, among other things, possessing a sexual perform-
ance by a child (three counts) and perjury in the first degree.
After a jury trial, defendant was convicted of one count of pos-
sessing a sexual performance by a child[1] and perjury in the first
degree. Following his sentencing, defendant moved pursuant to
CPL 440.10 to vacate the judgment of conviction asserting,
among other things, *Rosario* violations; County Court denied
this motion.[2] Defendant now appeals from both the judgment of
conviction and the order denying his postconviction motion.

We affirm. Preliminarily, we note that defendant's challenge
to the legal sufficiency of the evidence presented at trial is
unpreserved for this Court's review because his motion for a
trial order of dismissal with respect to the charges of which he
was convicted was not made with sufficient particularity (*see
People v Hawkins*, 11 NY3d 484, 492 [2008]; *People v Gray*, 86
NY2d 10, 19 [1995]; *People v Malcolm*, 74 AD3d 1483, 1484 n
[2010], *lv denied* 15 NY3d 954 [2010]). Nevertheless, as defend-
ant also argues that the verdict is against the weight of the evi-
dence (*see* CPL 470.15 [5]), we will necessarily evaluate whether
the elements of the crimes charged were adequately proved at
trial (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People
v Garcia*, 79 AD3d 1248, 1250 [2010], *lv denied* 16 NY3d 797
[2011]; *People v Jones*, 79 AD3d 1244, 1246 [2010], *lv denied* 16
NY3d 832 [2011]).

In order to convict defendant of possessing a sexual perform-
ance by a child, the People were required to prove that defend-
ant knowingly had "in his possession or control any perform-
ance which includes sexual conduct by a child less than [16]
years of age" with knowledge of its content and character (Penal
Law § 263.16; *see People v Horner*, 300 AD2d 841, 842 [2002]).
"Sexual conduct" includes, among other things, "oral sexual
conduct" (Penal Law § 263.00 [3]). Here, the People presented
the testimony of State Police Investigator Joseph Bearor that,
after obtaining consent to search the computers from defendant
and his wife, Jennifer Tucker, the computers were turned over
to the forensic lab, where they were examined by Kimberly
Cardona, a computer forensic analyst. Cardona testified in ex-
plicit detail as to how she conducted her examination of the
computers, which ultimately revealed that the desktop com-
puter contained, as relevant here, images, described by Cardona
as the remnants of a video portraying children engaging in

---

**1.** Two counts of the indictment were dismissed by County Court following
a motion to dismiss by defendant at the close of the People's case.

**2.** Defendant also raised such assertions in a CPL 330.30 motion made
prior to sentencing, which County Court also denied.

sexual conduct, as well as "wipe-and-erase" software. Her analysis also concluded that the laptop computer contained information that suggested that there may have been files associated with child pornography and "wipe-and-erase" software on that computer. Regarding the desktop computer, Cardona explained that her search of various keywords resulted in "thousands of hits" in areas of the computer's hard drive associated with the user's Internet browsing history. Specifically, she found such evidence in the hard drive's "unallocated" space—which she described as the area where deleted files are located—as well as in certain "temporary" files.[3] Using retrieval software, Cardona was able to recover the images and files from the unallocated space and temporary files. She then created a report which, among other things, contained a history of Internet sites bearing child pornography keywords in their description that the user of the desktop computer had accessed. Cardona also found more than 200 files representing partially downloaded videos consisting of images depicting children engaged in sexual activity—including oral sex—which were downloaded from a peer-to-peer file sharing program.[4] James Fuchs, an experienced pediatrician, testified that the images that defendant was ultimately convicted of possessing depicted a female who was "pre-pubertal or, at best very, very early in puberty, and would definitely be less than 16 years old . . . 13 or 14 at the most, probably less."[5]

According to Tucker's testimony, the desktop computer was kept in the living room of the home that she shared with defendant and their children, and defendant routinely used it to look at pornography. She further testified that defendant also used the laptop computer, and she produced a photograph show-

---

**3.** Cardona further explained that files may be removed from the unallocated space by using "wipe-and-erase" software, such as that found on the desktop computer, but that such files may still remain in other areas of the drive, including "temporary" files, which can be retrieved with proper software. She testified that, although readily available, the use of both "wipe-and-erase" and retrieval software is beyond the abilities of the average computer user.

**4.** Although Cardona found no such videos or images in the program's "saved" folder, which would have indicated that they had been completely downloaded, she explained that this could have resulted from a number of affirmative acts on defendant's part, including the use of the "wipe-and-erase" program to delete them from the "saved" folder (*see People v Kent*, 19 NY3d 290 [2012]).

**5.** Fuchs explained that his opinion was formulated using the Tanner Staging System, a method that assigns a numeric identifier from one to five for assessing the stage of puberty that an individual has achieved, with one being a pre-pubescent child and five a fully developed adult. Fuchs found that the Tanner Staging System placed the sexual development of the individual in the subject images between stages one and two.

ing him using it with friends. Tucker stated that she did not know what "wipe-and-erase" software was, she never used the computer to search for child pornography, she monitored the use of the computer by their daughters and the friends of their oldest daughter and had no knowledge that they had ever used it for that purpose. Finally, the People produced defendant's grand jury testimony that he used the desktop computer and had, at one time, upgraded its memory, which required that he physically open it and place the memory within it.

Viewed in its totality, the evidence demonstrated the existence of a video containing images of a sexual performance by a person under the age of 16, as well as "wipe-and-erase" software, on a computer regularly used by defendant. While defendant elicited testimony that multiple other individuals, including Tucker and their oldest daughter, had access to the desktop computer, Tucker testified that neither of them viewed child pornography and there was no evidence that anyone else actually used the computer. Further, whereas the testimony demonstrated that defendant had sufficient knowledge of computers to utilize the "wipe-and-erase" software in an attempt to delete the illicit images contained on the hard drive, no other known user of the desktop computer had such knowledge. Even if a different finding would not have been unreasonable, when we view the evidence in a neutral light and defer to the jury's superior position to determine witness credibility (*see People v Newland*, 83 AD3d 1202, 1205 [2011], *lv denied* 17 NY3d 798 [2011]), we find that the jury accorded the evidence its proper weight (*see People v Romero*, 7 NY3d 633, 643-644 [2006]; *People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Rolle*, 72 AD3d 1393, 1396 [2010], *lv denied* 16 NY3d 745 [2011]) in determining that defendant knowingly possessed on the desktop computer an image of a sexual performance by a child.

Turning to the perjury charge, the People were required to prove that defendant made sworn statements that were false and consisted of testimony that was " 'material to the action, proceeding or matter in which it [was] made' " (*People v Shoga*, 89 AD3d 1225, 1229 [2011], *lv denied* 18 NY3d 886 [2012], quoting Penal Law § 210.15). To that end, the People presented defendant's testimony before the grand jury that the only time he ever used the laptop computer was one occasion when he fixed a problem that his daughter was having with the Internet connection. This testimony was in direct contradiction to Tucker's testimony, both before the grand jury and at trial, that defendant routinely used the laptop computer, as evidenced by the photograph depicting one incidence of such use. Thus, the

People demonstrated that defendant had made a sworn statement that was false.

As to materiality, "the statement need not prove directly the fact in issue; it is sufficient if it is circumstantially material or tends to support and give credit to the witness in respect to the main fact . . . Put another way, the test of materiality may be said to be whether the false testimony has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation" (*People v Davis*, 53 NY2d 164, 171 [1981] [internal quotation marks and citations omitted]). Here, defendant's testimony with regard to his lack of use of the laptop computer was material to the grand jury's investigation leading to the instant charges because defendant was attempting to suggest that other individuals were responsible for the presence of the images on the desktop, as well as the keyword hits on the laptop (*see generally People v Davis*, 53 NY2d at 170-171; *People v Williams*, 51 AD3d 1141, 1143 [2008], *lv denied* 10 NY3d 959 [2008]), and witness credibility was a key factor. Accordingly, defendant's conviction of perjury in the first degree was not against the weight of the evidence (*see People v Shoga*, 89 AD3d at 1229).[6]

To the extent that defendant argues that the evidence before the grand jury was not legally sufficient, such challenge is precluded by defendant's conviction of the charges at trial on legally sufficient evidence (*see* CPL 210.30 [6]; *People v Smith*, 4 NY3d 806, 808 [2005]; *People v Gratton*, 51 AD3d 1219, 1221 [2008], *lv denied* 11 NY3d 736 [2008]). However, insofar as defendant's argument consists of a claimed *Rosario* violation, it is properly before this Court in the context of his appeal from the denial of his CPL 440.10 motion.

Defendant's *Rosario* arguments relate to one full day of grand jury testimony that was not provided to him. As pertinent here, such testimony included that of defendant's daughter and part of the testimony of Tucker and Bearor. Inasmuch as defendant's daughter never testified at trial, the People's failure to provide her grand jury testimony to defendant was not a *Rosario* violation (*see* CPL 240.45 [1] [a]; *People v Mosby*, 69 AD3d 1045,

---

**6.** We find unpreserved defendant's argument that a grand jury may not indict for crimes committed before it, as he failed to move to dismiss the indictment on that ground (*see* CPL 210.20 [1] [c]; *People v De Vivo*, 282 AD2d 770, 772 [2001], *lv denied* 96 NY2d 900 [2001]). In any event, such argument is without merit as defendant has failed to make a specific " 'showing of prosecutorial misconduct, fraudulent conduct or any other error potentially prejudicing the [g]rand [j]ury's ultimate decision' " (*People v Maddox*, 31 AD3d 970, 973 [2006], *lv denied* 7 NY3d 868 [2006], quoting *People v De Vivo*, 282 AD2d at 772).

1048 [2010]; *People v Marsh*, 248 AD2d 743, 745 [1998], *lv denied* 92 NY2d 856 [1998]). Although the nondisclosed testimony of Bearor and Tucker does constitute *Rosario* material, our review thereof reveals that it was not relevant to the outcome of the trial and its nondisclosure did not prejudice defendant (*see People v Avery*, 80 AD3d 982, 984-985 [2011], *lv denied* 17 NY3d 791 [2011]). Accordingly, County Court properly denied defendant's CPL 440.10 motion on that basis and reversal of the judgment of conviction is not warranted (*see id.* at 985; *People v Oglesby*, 12 AD3d 857, 861-862 [2004], *lv denied* 5 NY3d 792 [2005]).

Defendant's remaining contentions have been examined and found to be lacking in merit.

Peters, P.J., Malone Jr., Kavanagh and Egan Jr., JJ., concur. Ordered that the judgment and order are affirmed.

